UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. CHINYERE ODELUGA, | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| PCC COMMUNITY WELLNESS CENTER; VHS WEST SUBURBAN MEDICAL CENTER, INC., a.k.a. Vanguard West Suburban Medical Center; DR. JEN ROSSATO; DR. PAUL LUNING; DR. ALEXANDER WU; and DR. ANTOINETTE LULLO, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 12-cv-07388

Judge John W. Darrah

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Chinyere Odeluga has filed a six-count Third Amended Complaint ("TAC") against Defendants relating to her participation in a medical fellowship program. Defendant PCC Community Wellness Center ("PCC") has moved to dismiss Count VI of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Odeluga has failed to state a claim for breach of contract. For the reasons stated below, PCC's Motion to Dismiss [65] is granted, and Count VI is dismissed.

### BACKGROUND

The following facts are taken from the TAC and assumed to be true for purposes of a motion to dismiss. Odeluga is a forty-eight-year-old, Nigerian-born female, a United States citizen, and a doctor. (TAC ¶ 6.) PCC runs a Maternal Child Health Fellowship Training Program ("Fellowship Program"), which allows PCC fellows to perform relevant surgical operations and medical care towards obtaining a Maternal Child Health ("MCH") certification at

1

a hospital owned and operated by a third-party, Vanguard Medical Center. (*Id.* ¶ 9; *see also* TAC, Ex. 1.)

In or about 2009, Odeluga saw an advertisement about the Fellowship Program on PCC's website and applied to it. (*Id.* ¶¶ 25, 27.) She was accepted into the Fellowship Program for the 2010-2011 year, along with eight other physicians. (*Id.* ¶¶ 9-10, 28.) On March 26, 2010, Odeluga signed an employment agreement with PCC, entitled "PCC Wellness Center Employment Agreement," and is attached to the TAC as Exhibit 2 (the "Employment Agreement"). (*Id.* ¶ 30.) The Employment Agreement stated that it would begin on July 22, 2010 and continue until July 25, 2011. (TAC, Ex. 2.) Although the Fellowship Program began on July 1, 2010, Odeluga was allowed to start on October 1, 2010, because she had recently given birth. (TAC ¶¶ 31-32.)

After Odeluga began the Fellowship Program, the Fellowship directors began receiving complaints about her performance from doctors and nurses working at the hospital. (*Id.* ¶ 44.) Odeluga received negative write-ups and was eventually placed on a Performance Improvement Plan. (*Id.* ¶¶ 46-48.) After being placed on the plan, Odeluga continued to receive negative write-ups, had to attend many evaluation meetings, and was excessively scrutinized and treated worse than other Fellows. (*Id.* ¶ 49.)

PCC terminated Odeluga's participation in the Fellowship Program in June 2011. (*Id.* ¶ 68.) Odeluga appealed her termination to PCC's Chief Executive Officer, Robert Urso. Urso reinstated Odeluga on or about July 17, 2011, but told her that there was no guarantee she would get a MCH certificate even if she completed the program and met all the requirements by September 30, 2011. (*Id.* ¶ 74-77.) September 30, 2011 was the official completion date for Odeluga to graduate and receive a MCH certificate. (*Id.* ¶ 77.) Urso allegedly told Odeluga she

had "not violated the terms of her MCH Fellowship contract with PCC" and that was the reason he reinstated her employment. (*Id.* ¶ 78.) On or about July 18, 2011, Odeluga resumed her Fellowship activities with PCC. (*Id.* ¶ 79.) Odeluga completed all her required surgical procedures for certification on September 30, 2011. (*Id.* ¶ 86.) She requested PCC graduate her and provide her with a MCH certificate, but PCC refused. (*Id.* ¶ 88.)

Odeluga initiated this action on September 16, 2012. On Defendants' motion, on August 27, 2013, this Court dismissed one Defendant and several of the counts. Odeluga filed the TAC on September 28, 2013. PCC has moved to dismiss the breach of contract claim contained in Count VI of the TAC.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). The pleading standard requires the "complaint [to] provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted). Courts construe the complaint in the light most favorable to the plaintiff when assessing a Rule 12(b)(6) motion to dismiss; all well-pleaded facts are accepted as true, and all reasonable inferences are construed in favor of the plaintiff. *Id.* However, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims are factually plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[T]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ANALYSIS

Under Illinois law, a breach of contract claim requires four elements: "(1) the existence of a valid and enforceable contract; (2) performance by plaintiff; (3) breach of contract by defendant; and (4) resultant injury to the plaintiff." *Van Der Molen v. Wash. Mut. Finance, Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) (internal quotations and citations omitted). In Count VI, Odeluga alleges that PCC breached the Employment Agreement in two ways: (1) terminating her without giving her a 30-day notice and (2) not awarding her the MCH certificate upon her completion of the Fellowship Program. PCC argues that it never terminated the Employment Agreement and that it was not required to give her the MCH certificate.

*PCC's Alleged Failure to Give Odeluga a 30-Day Notice of Her Termination*

Odeluga argues that under the Employment Agreement, she was entitled to a 30-day notice of termination and that this notice extended to her participation in the Fellowship Program, a description of which was attached to the Employment Agreement as Exhibit A. PCC responds that, as a preliminary matter, it never terminated the Employment Agreement and only terminated Odeluga's participation in the Fellowship Program. PCC points to its June 2, 2011 letter to Odeluga, in which PCC explicitly states that it was terminating Odeluga from the Fellowship Program but would continue to employ her through the end of the Employment Agreement.[1]

---

[1] Odeluga referenced the June 2, 2011 letter in the TAC, and therefore, the letter is properly considered. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Odeluga has not stated a claim for breach of contract based on the lack of a 30-day notice. As shown by the June 2, 2011 letter, PCC continued to employ Odeluga under the Employment Agreement and had only terminated her participation in the Fellowship Program. Odeluga also has not plausibly alleged that the 30-day notice applied to the Fellowship Program. Although the Employment Agreement references the Fellowship Program under the heading "Physician Obligations," it is in the context of Odeluga's employment responsibilities and does not impose a 30-day notice on the Fellowship Program. Moreover, as PCC points out, the Employment Agreement did not require a 30-day notice for every termination. Rather, Section 7(c) required a 30-day notice when termination was based on three, specific reasons: (1) professional misconduct; (2) failure to comply with policies that made it impractical for PCC to conduct business; and (3) failure to provide services for patients when requested. (*See* TAC Ex. 2, pp7-8.) Odeluga has not alleged that she was terminated for any of the reasons that would require a 30-day notice.

Even if the 30-day notice applied to the Fellowship Program, Odeluga has not alleged that she suffered an injury as a result of that breach. By her own allegations, Odeluga admits that she was reinstated into the Fellowship Program and was given an extended completion date of September 30, 2011, so that she would have a full year in the program. Odeluga's alleged injuries are that she cannot take the board examination as she had anticipated and that she cannot receive the salary of physicians who are certified in MCH. However, neither of those alleged injuries is based on a lack of notice. For this reason, Odeluga's breach of contract claim based on the lack of 30-day notice is dismissed.

*PCC's Failure to Award Odeluga a MCH Certificate*

Next, Odeluga argues that PCC breached the Employment Agreement when it declined to give her a MCH certificate on September 30, 2011. Odeluga contends she completed the requirements for the Fellowship Program and should have received the MCH certificate.

Odeluga has failed to state a claim for breach of contract on this basis as well. As Odeluga expressly admits, the Employment Agreement does not mention the MCH certificate. Likewise, the Fellowship Program description, attached as Exhibit A to the Employment Agreement, does not mention the MCH certificate. Indeed, Odeluga can point to *no* contractual language showing that she was entitled to receive a MCH certificate upon the end of the Fellowship Program. Rather, Odeluga argues that there was "an implied contract" based on the history of the Fellowship Program.[2] This is insufficient to state a plausible claim that PCC breached the contract.

Odeluga has failed to state a claim for breach of contract against PCC. This is Odeluga's third attempt to state a claim for breach of contract based on the Employment Agreement, and it is clear that future amendments will be futile. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile."). Moreover, Odeluga has not requested leave to amend. Therefore, Count VI is dismissed with prejudice.

---

[2] Odeluga also has submitted an affidavit that PCC representatives orally promised that she would receive a certificate of completion if she faithfully and satisfactorily completed the 12-month Fellowship. On a motion to dismiss, a court is typically confined to the four corners of a complaint. *See Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). Since these new statements are not part of the TAC's allegations, they are not properly submitted to the Court and are not considered. *See Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (a complaint may not properly be amended by a response to a motion to dismiss).

## CONCLUSION

For the reasons set forth above, Defendant PCC's Partial Motion to Dismiss Plaintiff's Complaint [65] is granted. Count VI, breach of contract against PCC, is dismissed with prejudice.

Date:____February 26, 2014_____  _____
                                    JOHN W. DARRAH
                                    United States District Court Judge